IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

                                                              MDL No. 2326

---------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

    *Nancy B. Fleming & Gary Fleming*
    *v. Boston Scientific Corp.*                              No. 2:12-cv-5131

**MEMORANDUM OPINION AND ORDER**
(*Defendant's Motion for Summary Judgment Based on Statute of Limitations*)

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 41]. For the reasons set forth below, the Motion is **GRANTED**.

    **I.**    **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs

and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Flemings's case was selected as a Wave 2 case by the plaintiffs.

On February 15, 2008, Ms. Fleming was surgically implanted with Boston Scientific's Pinnacle Pelvic Floor Repair Kit ("Pinnacle"), a product manufactured by BSC to treat POP. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 41], at 2). Thereafter, on April 17, 2008, Ms. Fleming underwent a procedure to remove exposed mesh. (*Id.*). Then, on September 17, 2008, Ms. Fleming was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System (the "Obtryx"). (*Id.*). She received both surgeries at a hospital in Tallahassee, Florida. (*Id.*). Ms. Fleming claims that as a result of implantation of the Pinnacle mesh product, she has experienced multiple complications. (*Id.*). In her Short Form Complaint, she brings the following claims against BSC as to both the Pinnacle and the Obtryx: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (Short Form Comp. [Docket 1], at 2). Mr. Fleming brings a claim for loss of consortium. (*Id.*). In the instant motion, BSC argues that all of the plaintiffs' claims are barred by Florida's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss the entire case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

3

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the plaintiffs did in this case, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Fleming received the implantation surgeries in Florida. Thus, the choice-of-law principles of Florida guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Florida law to the plaintiffs' claims. In tort actions, Florida adheres to the Restatement (Second) of Conflict of Laws ("Restatement"). *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980). Under section 145 of the Restatement, the court must apply the law of the state with the

most "significant relationship to the occurrence and the parties." Here, Ms. Fleming resides in Florida, the product at issue was purchased in Florida, and the product was implanted in Florida. Thus, I apply Florida's substantive law—including Florida's statutes of limitations—to this case.

### III. Discussion

Because this case involves injuries allegedly sustained as a result of the implantation of two different products in separate procedures, I split my analysis into two categories: (1) Ms. Fleming's alleged injuries sustained as a result of implantation of the Pinnacle mesh product; and (2) Ms. Fleming's alleged injuries sustained as a result of implantation of the Obtryx.

#### A. The Pinnacle Mesh Product

Under Florida law, the statute of limitations for personal injury actions, including claims "founded on the design, manufacture, distribution, or sale of personal property," is four years from the date of injury or damage. Fla. Stat. § 95.11(3)(a), (e). Accordingly, a four-year statute of limitations governs all of Ms. Fleming's claims. Furthermore, a claim for loss of consortium is a derivative claim. *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971). Thus, Mr. Fleming's claim is likewise governed by a four-year statute of limitations.

Florida law provides that the statute of limitations runs "from the time the cause of action accrues." Fla. Stat. § 95.031. Importantly, a cause of action accrues on "the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." *Id.* § 95.031(2)(b). "The knowledge required to commence the limitation period . . . does not rise to that of legal certainty." *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991). Rather, a "'[p]laintiff need only have notice of the *possible* invasion of his legal rights' discoverable 'upon the exercise of due diligence.'" *Hamrac v. Dorel Juvenile Grp., Inc.*, No. 3:09CV390/RV/MD, 2010 WL 1879278, at *4 (N.D. Fla. May 11, 2010) (quoting

5

*Doe v. Cutter Biological*, 813 F. Supp. 1547, 1555 (M.D. Fla. 1993) (emphasis added))). Therefore, the limitation period generally "commences when the plaintiff should have known of either (1) the injury *or* (2) the negligent act." *Bogorff*, 583 So. 2d at 1002 (emphasis added). In product liability cases, however, in addition to having constructive knowledge of an injury, the plaintiff must have had "exposure to the product in question." *Babush v. Am. Home Prods. Corp.*, 589 So. 2d 1379, 1381 (Fla. Dist. Ct. App. 1991); *see also Walls v. Armour Pharm. Co.*, 832 F. Supp. 1467, 1478 (M.D. Fla. 1993) ("Florida courts ha[ve] required that products liability plaintiffs have knowledge that the connection between the injury and use of the product in question was 'to some extent causal.'") (quoting *Babush*, 589 So. 2d at 1381).

Ms. Fleming filed this action on September 5, 2012. (Short Form Compl. [Docket 1]). BSC argues that Ms. Fleming's causes of action were barred on April 17, 2012, because, by at least April 17, 2008, Ms. Fleming was aware of her injuries, and thus, the facts that gave rise to her claims. (Mem. in Supp. [Docket 41], at 7). The plaintiffs, on the other hand, argue that the limitation period did not commence until Ms. Fleming was equipped with knowledge that permitted her to attribute her health complications to the defective product.[1] (*See* Pls. Resp. to BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Resp. Mem. in Supp.") [Docket 65], at 9–10). Because it undermines the purpose of Florida's discovery rule, the plaintiffs' argument is

---

[1] The plaintiffs also argue that the statute of limitations was tolled by application of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). In *American Pipe*, the Supreme Court of the United States held that "[t]he commencement of a class action suspends the statute of limitations to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. Whether the *American Pipe* rule should apply to toll state law claims is not clear. *Compare Senger Bros. Nursery v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Plaintiff's reliance on *American Pipe* and *Crown* is misplaced. *American Pipe* and *Crown* did not involve a claim brought in federal court on diversity of citizenship."), *with Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 (11th Cir. 2003) ("There is no dispute that *American Pipe* has been followed in Florida state courts."). But I need not make this determination here. The Tennessee class action suit relied on by plaintiffs was not filed until July 12, 2012, by which time, as discussed *infra*, the four-year limitation period had already expired.

without merit.

As discussed above, to trigger the limitation period in product liability actions, Florida law only requires that a plaintiff be aware of her injuries following exposure to the alleged defective product. *Babush*, 589 So. 2d at 1381. Critically, Florida law does not require a plaintiff to have awareness of the alleged negligent act. *Cutter Biological*, 813 F. Supp. at 1554 n.3 ("The court in *Babush* did not require an awareness of a negligent act by a plaintiff before the statute of limitations was triggered in a product liability case. The plaintiff need only be aware of exposure to the product so as to suggest causation."). Here, the record is clear that by April 17, 2008, when Ms. Fleming underwent a procedure to remove exposed mesh, she was aware that the Pinnacle mesh product had been implanted inside of her *and* that she was experiencing adverse health effects. (*See* Ms. Fleming. Dep. [Docket 41-2], at 13:18–14:1; Dr. Douso Rs. [Docket 65-2], at 9). Accordingly, Ms. Fleming had notice of "the *possible* invasion of [her] legal rights." *Hamrac*, 2010 WL 1879278, at *4. No reasonable juror could infer otherwise.

Any argument by Ms. Fleming that she was not aware that she suffered an injury because the injuries were not distinct from complications naturally to be expected from her condition likewise fails. Indeed, Ms. Fleming testified that she never had pelvic pain nor pain due to sexual intercourse prior to the February 2008 procedure. (Ms. Fleming Dep. [Docket 41-2], at 13:18–14:1; 59:15–59:20). I therefore **FIND** that the four-year limitation period began to run against the plaintiffs on April 17, 2008. On this reasoning, to the extent the plaintiffs' claims arise out of the implantation of the Pinnacle mesh product, I **GRANT** BSC's Motion and **DISMISS** such claims.

### B. The Obtryx

In a footnote, BSC argues that the plaintiffs do not claim that the Obtryx caused Ms.

Fleming's injuries. (Mem. in Supp. [Docket 41], at 2 n.2). As a result, to the extent the plaintiffs' claims arise out of the implantation of the Obtryx, BSC argues that they should be dismissed. (*Id.*). In support, BSC points to deposition testimony in which Ms. Fleming testified that only the Pinnacle mesh product—"the first one that was planted"—caused her injuries. (*Id.* (citing Ms. Fleming Dep. [Docket 41-2], at 12:21–13:17)). Furthermore, BSC references Ms. Fleming's deposition, during which the plaintiffs' counsel failed to ask questions about the Obtryx, (Ms. Fleming Dep. [Docket 41-2], at 105:20–105:25), as well as the deposition of Dr. Douso, the implanting surgeon for both products, during which the plaintiff's counsel discussed only the Pinnacle mesh product specifically. (Dr. Douso Dep. [Docket 41-4], at 19:16–19).

In rebuttal, the plaintiffs take issue with BSC's contention that only the Pinnacle mesh product was discussed during Dr. Douso's deposition. (Resp. Mem. in Supp. [Docket 65], at 3 n.15 (explaining that the deposition testimony makes clear that the Pinnacle mesh product was to be discussed "more than the sling"—but not necessarily exclusively)). Moreover, the plaintiffs cite to their Short Form Complaint as proof that Ms. Fleming alleges that her claims are related to the Obtryx. (*Id.*).

The plaintiffs, however, utterly fail to contradict Ms. Fleming's sworn testimony that only the Pinnacle mesh product contributed to her injuries. (Ms. Fleming Dep. [Docket 41-2], at 12:21–13:17(asserting that only the Pinnacle mesh product—"the first one that was planted"— caused her injuries)). As a result, the plaintiffs have failed to present *any* evidence regarding causation with regard to claims arising out of the implantation of the Obtryx. *See Celotex Corp.*, 477 U.S. at 322–23 ("[S]ummary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element."). On this reasoning, to the extent

8

the plaintiffs' claims arise out of the implantation of the Obtryx, I **GRANT** BSC's Motion and **DISMISS** such claims.

### IV. Conclusion

As explained above, the defendant's Motion [Docket 41] is **GRANTED**, and the plaintiffs' case is **DISMISSED WITH PREJUDICE**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 26, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE